COURT OF APPEALS OF VIRGINIA

Present: Senior Judges Annunziata, Frank and Petty

JEREMY L. PERRY, S/K/A
 JEREMY LEE PERRY

                                                    MEMORANDUM OPINION*
v.        Record No. 1198-21-2                      PER CURIAM
                                                    JUNE 21, 2022
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
                           W. Allan Sharrett, Judge

            (Terry R. Driskill, on brief), for appellant.

            (Jason S. Miyares, Attorney General; Susan Brock Wosk, Assistant
            Attorney General, on brief), for appellee.


        After a bench trial, the Circuit Court of Prince George County convicted appellant of grand

larceny and sentenced him to ten years' incarceration, with five years and six months suspended.

Appellant appeals the conviction, arguing that the trial court "erred in finding [him] guilty of grand

larceny where only circumstantial evidence was introduced and where that circumstantial evidence

did not exclude every reasonable hypothesis of innocence, particularly, that there was another

criminal agent."

        Appellant's counsel moved for leave to withdraw. The motion to withdraw is accompanied

by a brief referring to the part of the record that might arguably support this appeal. A copy of that

brief has been furnished to appellant with sufficient time for him to raise any matter that he chooses,

along with a motion requesting an extension of time to allow appellant to file supplemental

pleadings. Appellant has not filed any *pro se* supplemental pleadings.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

"On appeal, an appellate court is required to consider the evidence and all inferences fairly deducible from it in the light most favorable to the Commonwealth, the prevailing party at trial." *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020). "In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020).

In January 2021, Robert Crotts and his daughter, Courtney Crotts, resided in Prince George County. Robert knew appellant because he previously had lived with Robert for two years while he was dating Courtney. During that time, Robert kept musical equipment, including fifteen cymbals, in a trailer behind his house. The trailer was located in a wooded area that was not visible from the road.

Although appellant moved out in 2019, Robert continued to receive his mail. Approximately six months after appellant moved out, Courtney submitted a change of address with the post office to stop appellant's mail from arriving at their house. Courtney had only brief communication with appellant since he moved out and last spoke with appellant in 2019 or 2020.

On January 12, 2021, appellant spoke with Robert on the phone and asked him if he had received appellant's stimulus check. Robert, who was unhappy with appellant, told him that he had not received the check, but if he did, he would "rip it up." After the phone call, Robert discovered that fifteen of his cymbals were missing from his trailer. Robert called the police and reported the cymbals missing.

After Robert discovered that the cymbals were missing, an unidentified user named "justbarrtom" contacted Courtney on Instagram regarding the cymbals. Courtney believed this account belonged to appellant, and she entered into a conversation with the user. Courtney started the conversation by stating, "Jeremy i [sic] have your check," and "Where can I meet you to get these back?" In response, the user said "Don't tel [sic] police pleas [sic]." Courtney then wrote, "Jeremy please call my house now please [sic] I have your money now." The user requested that Courtney deliver the check, but when Courtney asked where she could meet the user, the user accused Courtney of "rip[ping]" the check. Finally, after Courtney denied destroying the check, she asked, "Jeremy how long have I known you?" At no point did the user identified as "justbarrtom" contest being called Jeremy.

At trial, appellant testified that four or five other people were present during his phone call with Robert and that "one of them [has] a grudge against me. . . . [S]omebody is definitely setting me up." Appellant admitted that he knew about the trailer, knew that it contained Robert's musical equipment, and "went out there a lot with [Robert]." Appellant denied ever creating, or sending messages from, an Instagram account with the username, "justbarrtom."

After closing arguments, the trial court considered the short amount of time between appellant's phone call with Robert and the larceny. It noted how a person with a username of "justbarrtom" contacted Courtney instead of Robert. The trial court discussed that the person had specific knowledge about the musical equipment in the trailer, about the stimulus check, and Robert's threat to destroy the check. It noted that the person did not refute the name Jeremy and made "a very direct threat to destroy the evidence and, indeed, no evidence has been recovered." The trial court doubted that "a complete stranger" would have this specific conversation about the stimulus check and missing cymbals with Courtney. The trial court considered that apart from appellant's "vague assertion [that] there were some other people in the room," there was no

evidence that anyone else would frame appellant for this crime. The trial court could find "no alternative situation [consistent] with innocence" and convicted appellant of grand larceny. The trial court sentenced appellant to ten years' incarceration, with five years and six months suspended. This appeal followed.

ANALYSIS

Appellant argues that the trial court erred in convicting him of grand larceny "where only circumstantial evidence was introduced and where that circumstantial evidence did not exclude every reasonable hypothesis of innocence." Appellant argues that it "is entirely possible that someone who overheard the conversation . . . took the items." Appellant asserts that if he had sent the messages, he would have objected to being called "Jeremy," but "[a]nother agent would have been likely to have allowed the name to go unchallenged."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan*, 72 Va. App. at 521 (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

- 4 -

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). In proving the identity of a criminal actor, the Commonwealth may rely on circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). "It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Therefore, circumstantial evidence may prove identity when "circumstances of time, place, motive, means, opportunity and conduct concur in pointing out the accused as the perpetrator of the crime." *Schlimme v. Commonwealth*, 16 Va. App. 15, 18 (1993) (quoting *Potts v. Commonwealth*, 12 Va. App. 1093, 1097 (1991)).

"The 'reasonable hypothesis of innocence' concept is also well defined. The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Kelley*, 69 Va. App. at 629 (quoting *Pijor*, 294 Va. at 512). So "[m]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Ray v. Commonwealth*, 74 Va. App. 291, 308 (2022) (alterations in original) (quoting

*Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)). "While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572-73 (2009) (*en banc*)). "By finding [a] defendant guilty, therefore, the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *Ray*, 74 Va. App. at 308 (alteration in original) (quoting *Edwards*, 68 Va. App. at 301). When "'faced with a record of historical facts that supports conflicting inferences,' the [appellate] court 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of that prosecution, and must defer to that resolution.'" *Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

The evidence presented in this case contained several concurrent circumstances supporting the trial court's conclusion that appellant committed the larceny. The trial court questioned, "Who else would have contacted Courtney Crotts at this particular time, with the specific knowledge of a ripped up check and of the existence of cymbals in the shed and insisted on having—getting his check or the cymbals would be destroyed." Appellant and Robert did not communicate for years, but the larceny occurred shortly after Robert spoke to appellant about his stimulus check and Robert's intention to "rip it up." The cymbals were contained in a trailer, which was in a wooded area not visible to the road. Appellant admitted that he knew about the trailer and its contents from his time living at Robert's residence.

Shortly after the larceny, someone with the Instagram username of "justbarrtom" contacted Courtney, appellant's closest link to the family. The trial court questioned why the person would contact Courtney, as opposed to Robert, but also noted that appellant had "animosity" toward Robert. In addition, the trial court noted that the person sending the messages did not refute the

name, "Jeremy," even though Courtney referred to the unknown user as "Jeremy" on three occasions. The trial court found that the person who sent the messages had "specific knowledge," including details of appellant's phone call with Robert. After the person asked Courtney to deliver his check, he alluded to Robert's threat, stating "U ripped the check."

Finally, the trial court reasonably considered and rejected appellant's hypothesis of innocence. Appellant testified that four or five other people were present during his phone call with Robert and that "one of them [has] a grudge against me. . . . [S]omebody is definitely setting me up." The trial court did not find credible appellant's testimony and, instead, found that "[e]very piece of this evidence points only in one direction and that is to [appellant] and it points nowhere else." "The rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong . . . .'" *Ervin v. Commonwealth*, 57 Va. App. 495, 519 (2011) (*en banc*) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997)). Considering the totality of the evidence, the trial court did not err in rejecting appellant's hypothesis of innocence. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of grand larceny.

## CONCLUSION

Accordingly, we affirm the trial court's conviction and grant the motion for leave to withdraw. *See Anders v. California*, 386 U.S. 738, 744 (1967). This Court's records shall reflect that Jeremy L. Perry, s/k/a Jeremy Lee Perry is now proceeding without the assistance of counsel in this matter and is representing himself on any further proceedings or appeal.

*Affirmed*.